UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STEPHEN DANIEL NELSON, | : | |
|     *Plaintiff*, | : | 3:24-cv-007 (SVN) |
| | : | |
| v. | : | |
| | : | |
| COUNSELOR LANPHAER, *et al.*, | : | April 24, 2024 |
|     *Defendants*. | : | |

## INITIAL REVIEW ORDER

*Pro se* Plaintiff, Stephen Daniel Nelson, a sentenced inmate[1] currently incarcerated at Osborn Correctional Institution ("Osborn") of the Connecticut Department of Correction ("DOC"), has filed this civil rights complaint under 42 U.S.C. § 1983, suing four defendants in their individual and official capacities. He names two defendants who allegedly worked at DOC Corrigan-Radgowski Correctional Center ("Corrigan"): Counselor Lanphaer and Counselor Supervisor Lacy. Plaintiff also names two defendants who allegedly worked at Osborn: Deputy Warden Zegarzewski and Deputy Warden Robert Martin. Plaintiff brings claims under the First Amendment of the United States Constitution alleging denial of his right to access the courts. He seeks damages, a declaratory judgment, and several injunctive relief orders against Defendants.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be

---

[1] Information on the Department of Correction website shows that Plaintiff was sentenced on February 16, 2007, to a term of imprisonment of thirty years. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=239902 (last visited April 24, 2024). The Court may take judicial notice of matters of public record. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006).

granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[2] Based on this initial review, the Court dismisses Plaintiff's complaint.

## I.     FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.[3]

On September 23, 2014, Public Defender Westcott was appointed to represent Plaintiff in his direct criminal appeal, *State of Connecticut v. Nelson,* A.C. 37219. Compl. ¶ 10. On August 12, 2015, Attorney Westcott filed an "*Anders*"[4] motion to withdraw as counsel for Plaintiff. Compl. ¶ 11; *see also* Pl. ex. 2, ECF No. 1 at 19–21 (attorney correspondence), 24–29 (*Anders* motion filed by Attorney Westcott). On April 19, 2016, the Connecticut Superior Court granted Attorney Westcott's motion to withdraw because it agreed that Plaintiff's appeal was wholly

---

[2] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (*per curiam*) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the facial plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

[3] The Court also gleans information included herein from the exhibits included with, and relied upon by, Plaintiff's complaint. *See Delgado v. Concepcion*, No. 3:20-cv-787 (SRU), 2020 WL 7388959, at *1 n.3 (D. Conn. Dec. 16, 2020) (considering, on initial review of a prisoner civil complaint, the complaint and "documents attached to and incorporated by reference" into it) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)).

[4] *Anders* v. *California*, 386 U.S. 738, 744 (1967), outlined a procedure that is constitutionally required when, on direct appeal, appointed counsel concludes that an indigent defendant's case is wholly frivolous and wishes to withdraw from representation. *See, e.g.*, *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 674–76, *cert. denied*, 284 Conn. 939 (2007) (discussing filing of briefs by appointed counsel, pursuant to *Anders*, to inform court that habeas petition or appeal is "wholly frivolous").

2

frivolous. *See id.* at 22–23 (letter from Connecticut Appellate Clerk of Court), 30–33 (Connecticut Superior Court decision). Thereafter, Plaintiff was unable to secure counsel and was left with no choice but to represent himself. Compl. ¶ 11.

On March 13, 2016, Plaintiff requested Corrigan Correctional Counselor Lanphaer to make copies of his appeal brief and trial transcript. *Id.* ¶ 12. Counselor Lanphaer toured Plaintiff's unit later that day, and Plaintiff requested return of his legal documents. *Id.* Lanphaer declined to return the originals or copies of Plaintiff's legal documents, and responded, "If you are going to keep on talking to me, you will never get your copies." *Id.* As explained in greater detail further below, Plaintiff's appeal was eventually dismissed for failure to file an appellant's brief. *Id.*

Through the FOIA process, Plaintiff uncovered an email exchange originating with Defendant Lacy to a group of DOC officials concerning Plaintiff's missing legal paperwork, in which Defendant Lacy ordered the group DOC officials to file incident reports. Compl., Ex. 4, ECF No. 1 at 56–59. In response, Defendant Lanphaer submitted an incident report that he dropped off Plaintiff's paperwork in the inmate mailbox on March 3, 2016. *Id.* at 60. When Defendant Lanphaer returned the next day to pick the paperwork up for copying, the paperwork was gone. *Id.* Defendant Lanphaer notified Defendant Lacy immediately of the missing paperwork. *Id.* The other DOC employees, who are not named in this suit, attested to having no knowledge of the missing paperwork. *Id.* at 62–72. Defendant Lacy documented that he took corrective action, though this section of Lacy's report is redacted. *Id.* at 62. The paperwork was never located. *Id.* at 61.

Plaintiff also reported his interaction with Lanphaer to Deputy Wardens Martin and Zegarzewski. Compl. ¶ 14. The Defendants made it clear to Plaintiff that they did not "appreciate"

the importance of Plaintiff's appeal. *Id.* Plaintiff alleges Defendants Martin and Zegarzewski took no actions to rectify Plaintiff's injuries. *Id.* ¶¶ 20–21.

Initially, Plaintiff's appellate brief was due May 26, 2016. *Id.* at 22. However, sometime thereafter, the Connecticut Appellate Court extended Plaintiff's deadline. On July 27, 2016, the Connecticut Appellate Court issued an order instructing Plaintiff to file his appellant's brief by August 26, 2016, or his appeal would be dismissed. Compl. ¶ 12; *see also* Compl., Ex. 3, ECF No. 1 at 35 (letter from Appellate Court Deputy Chief Clerk), 38 (order from Connecticut Appellate Court dismissing for failure to file appellant's brief). After Plaintiff failed to comply with the court's scheduling order, the Appellate Court dismissed his appeal on August 31, 2016. Compl. ¶ 12; *see also id.* at 38 (dismissal order).

On April 11, 2016, the State of Connecticut Official Court Reporter informed Plaintiff that he could request his trial transcripts for $2,000 or submit for a waiver of the fee, which the Official Court Reporter enclosed. Compl., Ex. 10, ECF No. 1 at 90. It is unclear if Plaintiff ever paid the fee or requested a fee waiver in advance of his deadline to file his appeal. On April 28, 2016, Plaintiff filed a claim with the Connecticut Claims Commissioner seeking $2,000, the asserted cost of his lost trial transcripts. *See* Compl., Ex. 9, ECF No. 1 at 87–88 (Office of Claims Commissioner Memorandum of Decision). As an alternative reward to reimbursement, Plaintiff requested that he be allowed to purchase a boombox for $89.97. *Id.* at 87. In a decision dated July 21, 2021, the Office of the Claims Commissioner denied Plaintiff's claim because he had not demonstrated that he ever paid $2,000 to the court reporter's office or that he had attempted to retrieve a copy of his transcripts from the reporter's office based on his indigent status. *Id.* at 88. The Office of the Claims Commissioner also found that the Commissioner did not have jurisdiction to order that Plaintiff be allowed to purchase a boombox. *Id.*

In June 2022, Plaintiff entered into an agreement with the State of Connecticut requiring that he withdraw all pending postconviction claims related to his convictions in docket CR-05-022083 in exchange for the State of Connecticut modifying his sentence of fifty-five to the thirty years of imprisonment. Compl., Ex. 5, ECF No. 1 at 74 (agreement and stipulation). The Connecticut Superior Court granted this modification on August 16, 2022. Compl. ¶ 16.

Plaintiff claims that he has no avenue for redress because Defendants maliciously and recklessly withheld his Appeal Brief and Trial Transcript, and that his appeal—and ultimate sentence modification—could have resolved at an earlier date had Defendants not lost his legal materials. *Id.* ¶¶ 17–18.

## II.   DISCUSSION

For the reasons that follow, the Court finds that Plaintiff has not alleged any plausible constitutional violations under 42 U.S.C. § 1983.

### A.   Denial of Court Access

The Court finds that Plaintiff fails to state a First Amendment claim for denial of access to the courts.

#### 1.   *Viability of Plaintiff's Claim*

"Courts of Appeals have recognized two variants of right-of-access claims." *Sousa v. Marquez*, 702 F.3d 124, 127 (2d Cir. 2012) (citing *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002)). "First, plaintiffs may allege that 'systemic official action' frustrated their ability to file a suit." *Id.* (quoting *Christopher*, 536 U.S. at 413). This type of access claim is called "forward-looking" because the object of the claim is to put the "plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Christopher*, 536 U.S. at 413. "The second variant of right-of-access claims is 'backward-looking access claims,' covering suits

that 'cannot now be tried (or tried with all material evidence), no matter what official action may be in the future.'" *Sousa*, 702 F.3d at 127–28 (internal citations omitted) (quoting *Christopher*, 536 U.S. 413–14). A backwards-looking claim may occur, "for instance, if the official action 'caused the loss or inadequate settlement of a meritorious case.'" *Id.* at 128. The Second Circuit has not formally recognized the viability of backwards-looking claims. *Id.* (declining to decide the viability of backwards-looking claims); *accord Kern v. Contento*, No. 21-1672, 2022 WL 1112767, at *3 (2d Cir. Apr. 14, 2022) (summary order).

The Court understands Plaintiff to bring a backwards-looking access claim. He seeks to remedy an injury related to the direct appeal in his criminal conviction that occurred in 2016, which has long since passed. There is not now an impediment that Plaintiff alleges Defendants have erected that is preventing him for litigating any active claims. Rather, he seeks relief for an impediment in the past. While the Second Circuit has not decided the viability of these claims, other courts in this circuit have analyzed the merits of a plaintiff's backward-looking claim. *E.g.*, *Blake v. Dowe*, 36 F. Supp. 3d 271, 277 n.2 (D. Conn. 2014). Accordingly, the Court will not dismiss Plaintiff's claim for this reason alone.

### 2. *Merits of Backwards-Looking Access Claim*

For the reasons that follow, even if the Second Circuit recognized backwards-looking access claims, the Court would find that Plaintiff fails to state a claim.

Those courts in the Second Circuit that have addressed backwards-looking claims have yet to coalesce around a single test for demonstrating them. *Compare Mahon v. Moultrie*, 657 F. App'x 52, 53 (2d Cir. 2016) (summary order) ("To state a claim of denial of court access, 'a plaintiff must allege that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim' and that the defendant's actions resulted in actual injury

to the plaintiff.") (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)), *with DeMeo v. Tucker*, 509 F. App'x 16, 18 (2d Cir. 2013) (summary order) ("To succeed on a denial of access claim, a plaintiff must show that the defendants (1) engaged in deliberate and malicious conduct that (2) resulted in actual injury, *i.e.*, that hindered the plaintiff's effort to pursue a legal claim."), *and Andrews v. City of New York*, No. 23-CV-2411 (LTS), 2023 WL 3724978 (S.D.N.Y. May 30, 2023), *appeal dismissed*, No. 23-1007, 2023 WL 9111371 (2d Cir. Dec. 14, 2023) ("First, the plaintiff must identify a nonfrivolous, arguable underlying claim.  Second, the plaintiff must establish that the defendant took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim.  Third, the plaintiff must show that the defendant's alleged conduct was deliberate and malicious.  Fourth, the plaintiff must demonstrate that the defendant's actions resulted in an actual injury to the plaintiff.").

The Court adopts the following view of the test for prisoner suits, as it best understands Second Circuit and Supreme Court guidance.  "To state a denial-of-access-to-the-courts claim, a prisoner must show that:  (1) he suffered an 'actual injury,' (2) to a non-frivolous legal claim, (3) concerning his criminal conviction, habeas corpus petition, or conditions of confinement." *Kaminski v. Semple*, 796 F. App'x 36, 38–39 (2d Cir. 2019) (summary order) (quoting and citing *Lewis v. Casey*, 518 U.S. 343, 349, 352–54 (1996)).  A plaintiff must describe the underlying claim "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).  "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417–18.  In *dicta*, the Second Circuit has stated that a plaintiff may pursue such a claim "if the governmental action

7

caused the plaintiff's suit to be dismissed as untimely." *Sousa*, 702 F.3d at 128 (citing *Swekel v. City of River Rouge*, 119 F.3d 1259, 1264 (6th Cir. 1997)).

As an initial matter, Plaintiff has not set forth his underlying claim with enough specificity to satisfy the pleading requirements of an access to courts claim. Plaintiff has neither described his criminal convictions nor the nature of the arguments he intended to present on appeal. While Plaintiff has provided detail as to the alleged loss of his legal materials, Plaintiff has provided only conclusory claims in support of the underlying claim. *E.g.*, Compl. ¶ 17 ("The lost [sic] of the plaintiff's appeal brief by these defendants . . . is a pivotal factor that contributed to the extended timeline in resolving my criminal conviction."). However, because Plaintiff is proceeding *pro se*, and because Plaintiff's inclusion of materials related to Attorney Westcott's *Anders* motion provides insight into the arguments Plaintiff may have pursued on appeal, the Court does not dismiss Plaintiff's claim for deficient pleading.

However, Plaintiff has not alleged facts to suggest that his appeal would have involved a nonfrivolous claim, which is fatal, even on initial review. The Connecticut Superior Court, in granting Attorney Westcott's *Anders* motion, determined that Plaintiff's appeal was "wholly frivolous." Compl., Ex. 2, ECF No. 1 at 30–33. Plaintiff sought appeal based on the trial court's decision denying his *pro se* motion for DNA testing of additional evidence used to convict him at his criminal trial. Compl ¶ 14; *see also* Compl., Ex. 2, ECF No. 1 at 18 (letter from Attorney Westcott); *id.* at 30 (order granting *Anders* motion). The court determined that Plaintiff's appeal would be wholly frivolous because the victim was familiar with Plaintiff prior to the commission of the crime and had ample opportunity to view Plaintiff; it concluded that finding DNA evidence from additional individuals at the scene of the crime would not exonerate Plaintiff because the crime involved multiple perpetrators, and that additional DNA testing of evidence in the record

8

would be fruitless because there were no DNA samples on the evidence that could be tested. ECF No. 1 at 32 (explaining that the hat Plaintiff sought to test did not have hair samples); *see also Nelson v. Warden*, CV-15-4007626-S, 2020 WL 6163993, at *3 (Conn. Super. Ct. July 22, 2020) ("An additional consideration was that there was no evidence from the criminal trials that could undergo DNA testing."). As no facts suggest that Plaintiff could have pursued a nonfrivolous claim, the Court must dismiss Plaintiff's First Amendment claims as implausible. *See* 28 U.S.C. § 1915A.

Furthermore, Plaintiff has not established that Defendant Lanphaer caused Plaintiff's injury. Plaintiff alleges that Lanphaer lost Plaintiff's copies of his appeal brief and trial transcript on March 3, 2016. Compl. ¶ 12. On March 4, 2016, Lanphaer informed Defendant Lacy of the lost legal materials, and so Defendant Lacy initiated a search. Compl., Ex. 4, ECF No. 1 at 56–72. By April 12, 2016, DOC officials had officially confirmed that Plaintiff's materials were lost. *Id.* at 61. However, Plaintiff's deadline to file his appeal was August 26, 2016. Compl., Ex. 3, ECF No. 1 at 38. Not only was there sufficient time to re-draft his appellate brief, but Plaintiff just as easily could have applied for and received his trial transcript at little to no cost from Connecticut Official Court Reporter, who informed Plaintiff on April 11, 2016, of Plaintiff's options to receive new copies of his lost materials. Compl., Ex. 10, ECF No. 1 at 90. Thus, even if the loss of Plaintiff's paperwork may have acted as a speedbump in Plaintiff's timely pursuit of his appeal, Plaintiff has not adequately alleged that the loss of the paperwork caused his untimely appeal, rather than Plaintiff's own tardiness.

For these reasons, the Court dismiss Plaintiff's First Amendment claims.

### B. Official Capacity Claims

For Plaintiff's benefit in amending his complaint, should he choose to do so, the Court analyzes Plaintiff's complaint to the extent he asserts his claims against Defendants in their official capacities.

To the extent Plaintiff asserts official capacity claims for money damages against Defendants (all state employees), such claims must be dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Similarly, "judgments against state officers declaring that they violated federal law in the past" are also barred by the Eleventh Amendment. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993) (citing *Green v. Mansour*, 474 U.S. 64, 73 (1985)). Accordingly, the Court would also dismiss Plaintiff's official capacity claims against all Defendants to the extent Plaintiff seeks declaratory relief or money damages.

Plaintiff would be permitted to seek prospective injunctive relief against Defendants at his present facility, however. *See In re Deposit Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("under the venerable doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."). As Plaintiff is no longer housed at Corrigan, however, his requests for official capacity relief against Defendants Lanphaer and Lacy, who allegedly work at Corrigan, are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).

### C. Personal Involvement

The Court also analyzes Plaintiff's complaint to the extent he brings claims against defendants who were not personally involved in Plaintiff's alleged injury.

A plaintiff seeking monetary damages from a defendant in her individual capacity must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). This is true with respect to supervisory officials, as well. *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Plaintiff has not alleged any facts in the body of his complaint about the direct involvement of Deputy Wardens Martin and Zegarzewski to deprive him of his legal papers. Instead, Plaintiff seeks to hold Defendants Zegarzewski and Martin liable for ignoring Plaintiff's complaints about Defendant Lanphaer. However, Defendants Zegarzewski and Martin are supervisors at Osborn and appear to have played no role in the events at Corrigan. Absent factual allegations to suggest that either of these Defendants acted to deprive Plaintiff of his legal materials, Plaintiff may not proceed on any claim against these Defendants in their individual capacities for damages.

### III. CONCLUSION

Based on the foregoing, the Court DISMISSES the Complaint for failure to state a plausible claim for relief under 42 U.S.C. § 1983.

Should Plaintiff wish to file an amended complaint to attempt to remedy the deficiencies mentioned in this order, he must do so by **May 24, 2024**.

**SO ORDERED** at Hartford, Connecticut, this 24th day of April, 2024.

                                      */s/ Sarala V. Nagala*
                                      SARALA V. NAGALA
                                      UNITED STATES DISTRICT JUDGE